# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* VERDUZCO, Minors.

UNPUBLISHED
August 25, 2015

No. 325952
Allegan Circuit Court
Family Division
LC No. 13-052472-NA

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

Respondent-father appeals as of right the January 20, 2015 order terminating his parental rights to the minor children under MCL 712A.19b(3)(a)(*ii*) (desertion), (c)(*i*) (conditions of adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), (h) (parent incarcerated), and (j) (reasonable likelihood that child will be harmed if returned to the parent). We affirm.

Father lived with mother and their two minor children intermittently until April 2012. Father and mother were not married. In April 2012, mother obtained a personal protection order (PPO) preventing father from contacting her or the children. At that time, mother was diagnosed with brain cancer. Mother and the children moved in with mother's parents in March 2013. Mother died in August 2013, and the children thereafter remained in the home of their grandparents. The trial court assumed jurisdiction over the children on January 14, 2014. On January 20, 2015, the trial court terminated father's parental rights to the minor children.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). If this Court concludes that the trial court did not clearly err in finding one statutory ground for termination, this Court does not need to address the additional grounds. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

With regard to MCL 712A.19b(3)(c)(*ii*), the trial court found that the other condition was father's substance abuse. The trial court found that father was given a reasonable amount of time to address this condition, but he failed to address it and there was no reasonable likelihood that father would rectify his substance abuse within a reasonable time considering the minor children's ages. We agree.

-1-

Father's substance abuse was a condition sufficient to cause the minor children to come within the court's jurisdiction.[1] MCL 712A.2(b)(2). At the February 18, 2014 dispositional and reimbursement hearing, caseworker Jonathan Bates testified that he recommended that father undergo an assessment for substance abuse. Bates testified that he made a referral for father to undergo a substance-abuse assessment. The trial court adopted the services that Bates recommended. Father was present at this hearing. On May 8, 2014, the Department of Health and Human Services (DHHS)[2] reported that father was referred to an organization to undergo substance-abuse evaluation and participate in drug screening. Therefore, father "received recommendations to rectify" his substance abuse and received "notice and a hearing" with regard to his substance abuse. MCL 712A.19b(3)(c)(*ii*). However, the evidence supported that father never participated in any services offered in the proceeding. He admitted to using methamphetamine twice in June 2014, and he was arrested that month for operating or maintaining a methamphetamine laboratory. Father never demonstrated that he was committed to sobriety or would be able to maintain the same outside of confinement. In fact, at the termination hearing, he stated that he did not think methamphetamine was worse than alcohol and did not participate in services while not incarcerated because he did not think he needed them. We conclude that the trial court did not clearly err in finding that father had a reasonable time to rectify his substance abuse problem, failed to rectify the problem, and that there was no "reasonable likelihood that" father's substance abuse would be "rectified within a reasonable time considering" the minor children's ages. MCL 712A.19b(3)(c)(*ii*).

In addition, father's argument that the DHHS failed to make reasonable efforts to assist with transportation to enable him to participate in services is without merit. "When a child is removed from a parent's custody, the agency charged with the care of the child is required to report to the trial court the efforts made to rectify the conditions that led to the removal of the child." *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011). Thereafter, "[a trial] court is not required to terminate parental rights if the State has not provided to the family of the child . . . such services as the State deems necessary for the safe return of the child to the child's home." *In re Rood*, 483 Mich 73, 104; 763 NW2d 587 (2009) (citations and quotation marks omitted). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *Id.* at 89.

Father gave no indication until the May 14, 2014 disposition review hearing that his lack of transportation was the cause of his inability to participate in services. At that hearing, Sarah Zuidema of Bethany Christian Services (BCS) indicated that she could provide father with bus passes. Bates had previously also told father that he could provide him with gas cards. In May 2014, the trial court asked DHHS and BCS to pursue in-home services for father and provide him with transportation assistance. Father never availed himself of the use of gas cards, and was

---

[1] The condition that led to adjudication was father's incarceration and the court found that substance abuse was the underlying reason for the incarceration.

[2] The Department of Human Services initiated this case, but it has since been merged into the newly created Department of Health and Human Services (DHHS). We therefore refer to the newly formed Department in this opinion.

arrested before in-home services were pursued. Further, although father testified that he did not have a vehicle and lived in an area without public transportation, there is no indication that he made any attempt to find a way to attend services. To the contrary, he failed to return telephone calls from DHHS and became angry and agitated when confronted with his treatment plan. Moreover, the fact that father was able to manufacture methamphetamine—an offense to which he pled guilty in November 2014—indicates that he was not without means of transportation. "While the D[H]HS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of [father] to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Because efforts were made to assist father with transportation, yet there is no evidence that father made an effort to participate in the services, he failed to establish plain error with regard to reasonable efforts made to assist him with transportation. *Id.*; *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

Additionally, we find no merit in father's argument—which he makes repeatedly throughout his brief on appeal—that the trial court clearly erred in terminating his rights because he had family members able and willing to care for the minor children. Father gave no indication whatsoever that he had family members willing to care for them until he testified at the January 20, 2014 termination hearing that he had two cousins and aunts who could care for the children. Nothing was known about these relatives, and at no time did they step forward to assist father or attempt to obtain care and custody of the children. Moreover, father testified that his relatives were available in the event that placement with the grandparents did not work out. The minor children had been living with their maternal grandparents since March 2013. Father did nothing to facilitate that placement, but agreed that it was a good placement for the children and that they were doing well there. Therefore, the trial court did not err when it terminated father's rights despite his last minute testimony regarding relatives that could potentially care for the children. Because one statutory ground for termination was clearly met, we do not address the other grounds, *In re HRC*, 286 Mich App at 461, beyond indicating that there was clear and convincing evidence to also support termination under (c)(*i*), (g), (h), and (j).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (citations omitted). "[W]hether termination of parental rights is in the best interests of the child[ren] must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review for clear error the trial court's determination regarding best interests. *In re Olive/Metts*, 297 Mich App at 40. When considering best interests, the focus is on the child rather than the parent. *In re Moss*, 301 Mich App at 87. The trial court should consider all available evidence to determine the child's best interests, *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000), and may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home," *In re Olive/Metts*, 297 Mich App at 41-42 (internal citations omitted). Other factors that the trial court can consider include how long the child lived in foster care or with relatives, the likelihood that "the child could be returned to [the] parent['s] home within the foreseeable future, if at all[,]" and compliance with the case service plan. *In re Frey*, 297 Mich App at 248-249.

The trial court did not clearly err in finding that the best interests of the children weighed in favor of them remaining with their grandparents because they had lived with their grandparents since before mother died, father had poor parenting skills, and the children needed stability which father could not provide. Father testified that before the PPO was initiated in 2012, he lived with mother and the children only intermittently. There is evidence that he physically abused mother. He was incarcerated twice for methamphetamine-related offenses and was imprisoned with a 51-month sentence at the time of termination for a methamphetamine conviction to which he pled guilty. He admitted to abusing substances and to being chronically unemployed. All evidence regarding the children's status with their grandparents indicate that they were happy living there, were in good physical and mental health, and were having all their needs met. The grandparents wished to adopt the children. When examining the children's need for permanency, stability, finality, and how long they lived with their grandparents, the trial court did not clearly err in finding that their best interest was in terminating father's rights and in remaining with their grandparents. *In re Olive/Metts*, 297 Mich App at 41-42; *In re Frey*, 297 Mich App at 248-249; *In re Moss*, 301 Mich App at 90.

Further, father's failure to comply with services indicated that the children's best interests were in termination. As discussed, evidence overwhelmingly shows that father failed to participate in any of the offered services and, even if transportation inhibited him from participating, there is no indication that he took any measures whatsoever to resolve that problem despite offers of help. Finally, the trial court found the children were more bonded to their grandparents than to father. The court noted that the oldest child may have some memory of her father, but that the grandparents were living with and raising the children since the time when the mother became ill, and therefore, any bonding strongly favored the grandparents. The evidence of record suggests to us that there was no bond with father. Father saw neither of them for a long time and to the extent they spoke of him at all, they expressed only fear of him. Therefore, this factor also weighs in favor of their best interest being termination. *In re Olive/Metts*, 297 Mich App at 41-42. In sum, there is far more than a preponderance of the evidence to suggest that termination was in the children's best interests; therefore, the trial court did not clearly err in so finding. *In re Moss*, 301 Mich App at 90.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens

-4-